**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **PAUL AND BEATRICE HESSONG** | * | |
| 57 E. Water Street | * | |
| Smithsburg, Maryland 21783 | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case No. |
| | * | |
| **CAPE SECURITIES, INC.** | * | |
| 1600 Pennsylvania Avenue | * | |
| McDonough GA   30253 | * | |
| | * | |
| Serve: | * | |
| | * | |
| Maryland Commissioner Securities Division | * | |
| 200 St. Paul Place | * | |
| Baltimore | * | |
| Maryland 21202 | * | |
| | * | |
| | * | |
| CSC-Lawyers Incorporating | * | |
| Service Company | * | |
| 7 St. Paul Street | * | |
| Baltimore, MD   21502 | * | MOTION TO VACATE ARBITRATION |
| | * | AND REMAND TO ENFORCE |
| And | * | SETTLEMENT; DECLARATORY |
| | • | JUDGMENT |
| **Steve Costa Tzotziz** | * | |
| 42 West 38th Street | * | |
| Suite 402 | * | |
| New York, NY   10018 | * | |
| | * | |
| Serve: | * | |
| Maryland Commissioner Securities Division | * | |
| 200 St. Paul Place | * | |
| Baltimore | * | |
| Maryland 21202 | * | |
| | * | |
| And | * | |
| | * | |
| | * | |
| **Jeff Bodner** | * | |
| 42 West 38th Street | * | |
| Suite 402 | * | |

New York, NY 10018                                    *
                                                      *
Serve:                                                *
Maryland Commissioner Securities Division             *
200 St. Paul Place                                    *
Baltimore                                             *
Maryland 21202                                        *
                                                      *
And                                                   *
                                                      *
**James Webb**                                        *
1600 Pennsylvania Avenue                              *
McDonough GA    30253                                 *
Serve:                                                *
Maryland Commissioner Securities Division             *
200 St. Paul Place                                    *
Baltimore                                             *
Maryland 21202                                        *
                                                      *
And                                                   *
                                                      *
**Michael Lovett**                                    *
1600 Pennsylvania Avenue                              *
McDonough GA    30253                                 *
                                                      *
Serve:                                                *
Maryland Commissioner Securities Division             *
200 St. Paul Place                                    *
Baltimore                                             *
Maryland 21202                                        *
                                                      *
              Defendants                              *
                                                      *
                                                      *

****************************************************************************

## MOTION TO VACATE ARBITRATION AWARD,
## REMAND TO ENFORCE SETTLEMENT, AND FOR DECLARATORY JUDGMENT

Petitioners, Paul and Beatrice Hessong, by their attorneys, Eisler Hamilton, LLC, and M. Christina Hamilton, Esquire, and Alan D. Eisler, Esquire, file this Motion to Vacate Arbitration Award and Remand to Enforce Settlement and for Declaratory Judgment and in support thereof state the following:

## <u>PRELIMINARY STATEMENT</u>

The Petitioners, Paul and Beatrice Hessong, age 77 and 74, lost their lives' savings, approximately $133,000 by investing with Cape Securities, Inc. from 2013 to 2014, and on May 21, 2015, the Petitioners submitted their claims to FINRA Arbitration.   After extensive negotiations, the Petitioners were willing to avoid the expense of arbitration by signing a settlement agreement on August 8, 2016, which resolved all issues.   Unbeknownst to the Petitioners, the Respondents appeared at the August 8, 2016 hearing and failed to apprise the Arbitrators that the matter had settled.   Instead, the Respondents demanded and were awarded damages for the Petitioners failure to appear as well as the Petitioners' purported failure to obey a subpoena compelling their attendance.   From the records below, it appears that FINRA, the Arbitrators, and the Respondents knew that Petitioners were not represented by attorneys but by a consulting group called Cold Spring Advisory Group, LLC, in violation of the Maryland rules prohibiting the unauthorized practice of law.

At the conclusion of arbitration, the Arbitrators elected to punish *the Petitioners* for the sins of their unlicensed representatives by entering a baseless award against the Petitioners in the amount of $45,000 for the failure of their representatives to appear at a hearing the Petitioners believed had been settled and failing to obey a subpoena compelling their attendance. Notwithstanding that the Respondents' qualification to do business in Maryland had been forfeited since 2009, the Respondents used a mandatory arbitration clause to file their Petition to Confirm the Arbitration Award in the Superior Court of Henry County, Georgia ("**Georgia**") on February 20, 2017, and not the U.S. District Court of Maryland, the jurisdiction where the Award was entered.

In recent months, the Financial Industry Regulatory Authority ("**FINRA**") has taken steps to address nationwide concerns regarding non-attorney representatives appearing on behalf of

claimants in FINRA Arbitration proceedings. **Exhibit 1**   FINRA Rule 12208(c) of the FINRA Code of Arbitration Procedure for Customer Disputes ("**Arbitration Code**") provides that, "parties to a FINRA arbitration maybe represented by a person who is not an attorney, unless state law prohibits such representation…"   However, Maryland, like many states have laws that prohibit an individual who is not an attorney from representing a claimant in a binding arbitration proceeding.   Maryland Rule 19-305.1 specifically prohibits non-attorneys from giving legal advice, preparing documents, and/or appearing before a tribunal that adjudicates the rights of the parties involved.   These actions are defined as the practice of law in Maryland pursuant to MD Bus Occ & Prof Code §10-101 *et seq.* and prohibited by the Maryland Rules of Professional Conduct.

Maryland lawyers are subject to oversight by the Attorney Grievance Commission who ensure that attorneys licensed in the Maryland comply with Rules of Professional Conduct such as Competence, Due Diligence, and Candor to a Tribunal.   Non-lawyers are not subject to any oversight save the criminal laws prohibiting the unauthorized practice of law.

For the reasons enumerated below both the Award and the subsequent judgments are void for lack of subject matter jurisdiction, personal jurisdiction, and fraud.   Furthermore, the Petitioners believe that the enforcement of the Georgia judgment violates the Due Process Clause of the 14th Amendment and also violates the FAA by allowing arbitrators to exercise contempt powers reserved for the U.S. District Court.   This Court retains jurisdiction to set aside judgments for fraud, misrepresentation, or misconduct, and to provide relief from final judgments when the prospective application is no longer equitable.   For the reasons, below, the Petitioners request such relief under the Federal Arbitration Act 9 U.S.C.1 *et seq*, and Federal Rule of Civil Procedure 60(b).

**PARTIES**

1.      Petitioner, Paul Hessong, 76 years old, is an individual who resides at 57 E. Water Street, Smithsburg, Maryland.

2.      Petitioner, Beatrice Hessong, 74 years old, his wife, is an individual who resides at 57 E. Water Street, Smithsburg, Maryland.

3.      Respondents, Cape Securities, Inc., ("**Cape Securities**") is a North Carolina corporation registered to do business in the State of Maryland since February 10, 2017, and conducts financial business from its home and main office located at 1600 Pennsylvania Avenue, McDonough, GA. Cape Securities Charter was forfeited in Maryland from 2008 to February 10, 2017.

4.      Respondent, Jeff Webb, Jr., ("**Webb**") is the Chief Executive Officer and President of Cape Securities, Inc., and resides and works in McDonough, Henry County, GA.

5.      Respondent, Steve "Costa" Tzotzis ("**Tzotzis**") is a duly registered agent with Cape Securities, Inc., and his main office is located in New York.

6.      Respondent, Jeff Bodner, ("**Bodner**") is a duly registered agent of Cape Securities, Inc. and his main office is located in New York.

7.      Respondent, Michael Lovett, ("**Lovett**") is an employee from Cape Securities, located in McDonough, GA, and served as Chief Compliance Officer of the corporation at the time the Petitioners had their accounts with Cape Securities, Inc.

**JURISDICTION AND VENUE**

8.      This is an action to vacate the January 6, 2017, Arbitration Award ("**Award**") of Arbitrators Jane Tam, David L. Ruderman, and Harold Craig Cohen (collectively "**Arbitrators**") issued in connection with an arbitration brought pursuant to the Financial Industry Regulation Authority, Inc. ("**FINRA**") Dispute Resolution Program and identified as FINRA Arbitration No.

15-01225.

9.      This court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1), and the amount in controversy originally demanded exceeds $75,000, exclusive of interest and costs, and the parties to this dispute are citizens of different states. Therefore, there is complete diversity of citizenship.

10.     This court also has jurisdiction of this action pursuant to Federal Arbitration Act 9 U.S.C. §10.

11.     Venue lies within this judicial district pursuant to 9 U.S.C. §9, in that the arbitration occurred in Baltimore, Maryland and the Award was issued within the District of Maryland. Venue is also appropriate pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred within the District of Maryland.

## FACTS

12.     Cape Securities is a financial services firm and member organization of FINRA.  As a FINRA member, certain disputes are resolved in arbitration pursuant to FINRA's Code of Arbitration Procedures for Industry Disputes.

13.     Co-Respondents, Webb, Tszokis, Bodner, and Lovett, ("**Co-Respondents**"), are registered agents, representatives, officers, or employees of Cape Securities and therefore they also submit certain disputes to FINRA to resolve in arbitration related to the buying and selling of securities.

14.     On or about, May 21, 2015, the Petitioners filed their Statement of Claim to FINRA Arbitration ("**SOC**") in which the Claimants requested compensatory damages in the amount of $123,553,46; interest; and lost opportunity damages; punitive damages; attorneys fees, costs, etc.. The SOC alleged churning; suitability; unauthorized trading; breach of fiduciary duty; breach of contract; elder abuse; disciplinary history; and failure to supervise and disgorgement (quantum meruit).   See **Exhibit 2** SOC

15. The Respondents on July 27th, 2015, filed an Answer and Counterclaim alleging Breach of Contract, Defamation of License, Interference with Business Relationships, Abuse of Process, and Defamation/Slander. See **Exhibit 3**

16. At the time that the Respondents filed their Counterclaim, Cape Securities Charter had been forfeited in Maryland since 2009 for its failure to file and pay personal property returns and taxes.  See **Exhibit 4**

17. The Respondents and the Petitioners filed fully executed Submission Agreements with their initial pleadings and responses. Consequently, all parties voluntarily submitted to FINRA's binding Arbitration Code.

18. On or about July 27, 2015, the Respondents filed a Joint Answer and a Counterclaim ("**Answer**") against the Petitioners.  The Counterclaim alleged that the Petitioners were "sophisticated and seasoned investors who have strong opinions about investing their money." **Exhibit 3**

19. Throughout the Respondents' Counterclaim they characterize the Petitioners, elderly retirees, as high stake, high rollers with over 30 year of investment experience under their belts. **Exhibit 3**

20. However, the Answer and supporting exhibits contained numerous factual inconsistencies which were obvious in the most cursory reading.  For example, the Answer alleged that the Petitioners' aggressive trading strategy was consistent with their financial condition.  The Petitioners were well into their 70's, were retired, and living on a fixed income of social security and a small pension.  **Exhibit 3**

21. The Answer also alleged that Paul had over "30 years of investing experience" and the trading activity in question was suitable to their expressed "primary speculation investment objective, risk tolerance, financial profile and preference for trading on margin."  **Exhibit 3**   In

support of this allegation the Respondents provide financial documents that include prefilled Cape Securities Account Applications with font so small as to be illegible without magnification.   See **Exhibit 5**

22.     Moreover, the Respondents claim that the Petitioner boasted to the Respondents that the Petitioners had an estimated liquid net worth of "between one hundred thousand ($100,000.00) and five hundred thousand dollars ($500,000.00)."   As support for these assertions, the Respondents again submitted specious applications with boxes prechecked and prefilled by the Respondents before obtaining the signatures of the Petitioners. See **Exhibit 6** (Petitioners' signature was obtained 8 days after documents were received by the Respondents)

23.     It appears from at least one document that the Respondents used the paperwork prefilled with information from *another* client but with Paul's signature underneath.   David T. Barry was 96 when he passed away in 2013 yet his name appears on the Respondents' documents in 2014.

**Exhibit 7**

24.     However, the documents that are actually handwritten by the Petitioners contain none of the boastful claims found in the Respondents' Counterclaim. **Exhibit 8**

**25.**     The Respondents also provided numerous financial documents to FINRA in discovery that contain the *opposite* of the claims made by Respondents with boxes checked that Petitioners have "limited" general investment knowledge, net assets less than $100,000, and with moderate investment strategy over 6-10 years.   **Exhibit 9**

26.     Perhaps the most troubling of all of the Respondents' assertions is the inherent contradiction in why after 30 years of purportedly successful trading, the Petitioners would suddenly engage in high risk, "bet the farm" type trading.   A fact clearly belied by the modest manner in which the Petitioners lived.

27.     The Answer alleges that at least one of the Co-Respondents, Tzotzis, met the Petitioners at

their home in Smithsburg which if true would suggest that Tzotzis had personal knowledge of the falsity of the claims that the Petitioners' net worth was over $500,000.

28.     The Petitioners live in a small wood paneled rancher built in 1957.   The house has a single bathroom and is warmed in the winter by a wood burning stove. The house is approximately 1400 square feet and decorated with well-worn furniture clearly retained for sentimental value instead of comfort.   The home is also indicative of who the Petitioners are:   conservative, pragmatic, no frills, retirees who live on assets paid for by the decades Paul worked as an inspector for Mack Truck.

29.     The Respondents submitted as Exhibits to the Arbitrators documents that the Respondents claim prove that Petitioners used emails to authorize numerous trades.   However, these purported emails were actually *faxes* sent from Susquehanna (now BB&T Bank) created by using a screenshot of Paul's email and then sent from the bank's fax number 3018246169 when Paul did not know how to open the documents the Respondents sent to his email account.

30.     Nearly all of the documents submitted to the Arbitrators show that written correspondence with the Petitioners was not conducted via email but by fax at the BB&T Bank in Smithsburg or by regular mail. **Exhibit 10**

31.     The Respondents' characterization of the electronic correspondence between the parties is contradicted by the documents themselves which shows the same BB&T fax number at the bottom of each purported email as well as the numerous handwritten letters sent by the Petitioners to the Respondents via first class mail. **Exhibit 11**

32.     Throughout the Arbitration, Petitioners were represented by Cold Spring Advisory Group, LLC, (**"Cold Spring"**) a "consulting group" recently cited by several FINRA Arbitration panels nationwide for compromising the integrity of the various arbitration proceedings by sending Non-attorney representatives ("NARS") on behalf of FINRA claimants in FINRA arbitration

proceedings.   Many of these FINRA panels prohibited Cold Spring from representing claimants once their NARS status was revealed.   See **Exhibit 12 Report from the Public Investors Arbitration Bar Association**

33.     The Petitioners' SOC was initially filed with FINRA by, New York licensed attorney, Hilton Wiener, Esquire referred by Cold Spring.

34.     The Respondents were represented by Judy Newcomb, Esquire, an attorney from Alabama.

35.     The members of the all public arbitration panel were Jane Tam, Presiding Chairperson, David L. Ruderman, and Harold Craig Cohen ("**Arbitrators**").

36.     The parties participated in discovery with both sides filing cross motions alleging various discovery failures which were ultimately denied.

37.     Trial was set for two days beginning on August 8, 2016 on the Petitioners' SOC and on November 14-16, 2017 on the Respondents Answer and Counterclaim.

38.     According to the Petitioners, on August 5, 2016 the Judy Newcomb, Respondents' attorney, sent a Settlement Agreement ("**Agreement**") to the Petitioner's attorney Hilton Weiner, Esquire which resolved all claims between the parties.   See Petitioners' Affidavits **Exhibit 13**

39.     The Respondents offered the Petitioners $24,500 to resolve all existing claims without any admission of liability subject to a strict nondisclosure agreement.   The Agreement also provides that the parties had to submit all claims arising out of the Agreement to FINRA for resolution. Settlement Agreement **Exhibit 14**

40.     The Petitioners executed the Agreement and on August 8, 2016 sent a copy of the signed Agreement to Hilton Weiner's office in New York from BB&T's fax machine.   The date stamp and fax numbers are prominently displayed on top of the Agreement.

41.     Unbeknownst to the Petitioners, the Respondents and their attorney appeared on August 8, 2016 for the hearing in Baltimore.   Upon seeing that both the Petitioners and their attorney were

not present, the Respondents immediately moved to dismiss the Petitioners' claims and requested

sanctions for the Petitioners failure to appear.   The Respondents and Newcomb failed to advise

the Arbitrators that a settlement had been reached by the parties. See **Exhibit 2**

42.     The Respondents requested $7500 for compensatory damages as a result of the Petitioners'

purported failure to appear for the August 8, 2016 hearing.

43.     By Order dated September 7, 2016, the Arbitrators ordered the Petitioners to pay $7500 on

"Respondents' Motion for Sanctions which was previously granted by Order dated August 10,

2016.   In doing so the Arbitrators denied the Claimants' August 23, 2016 Motion for Sanctions,

Motion to Strike Respondents' Affidavit of Damages, and Motion to Set Aside Sanctions Order

dated August 10, 2016 without a hearing.   **Exhibit 2**

44.     The Petitioners filed a Motion to Reconsider on the basis that an Agreement was reached.

The Arbitrators refused to consider the Agreement and without receiving any further evidence

denied the motion.   **Exhibit 15**

45.     The Petitioners tried numerous times to contact Hilton Wiener, but instead Cold Spring

Advisory Group, substituted Jennifer Tarr ("**Tarr**") and Louis Ottimo ("**Ottimo**"), both NARS, to

enforce the settlement agreement.   **Exhibit 2 and 13**

46.     The Petitioners retained counsel in New York in an attempt to stay the Arbitration hearings

scheduled for November 14, 2016 on the Respondents Counterclaims. **Exhibit 16**

47.     By letter dated November 1, 2016, the Petitioners, *pro se,* also informed FINRA that the

matter had settled and the Award assessing the Petitioners $7500 in damages should be vacated as

a result.   FINRA docketed the letter as another Motion to Reconsider which they also summarily

denied.   **Exhibit 17**

48.     Prior to the November 15 ,2016 hearing, the Respondents filed motions advising the

Arbitrators that Tarr and Ottimo's were not attorneys. **Exhibit 18**   The Arbitrators took no action

regarding the issues raised concerning Tarr and Ottimo representation of the Petitioners.

49.     On November 14, 2016, the hearing on the Respondents' Counterclaims began with Tzotzis testifying on behalf of the Respondents.   The Petitioners testified telephonically on November 16, 2016, that Paul didn't use his email to authorize trades with Tzotzis.   Ottimo and Tarr continued to represent the Petitioners throughout the hearings conducted on November 14-16, 2016.

50.     The Petitioners have requested the audio recording of all the hearings conducted before the Arbitrators and have serious concerns about the authenticity of the documents presented to the Arbitrators and the testimony presented.

51.     On January 6, 2017, the Arbitrators entered an Award totaling $45,000 against the Petitioners for compensatory damages claimed by Cape Securities, Inc. resulting from the Petitioners failure to appear on August 8, 2016 to prosecute their claims as well as the Petitioners failure to comply with the Arbitrators' subpoena which compelled the Petitioners' attendance at the August 8, 2016 hearing in Baltimore.

## COUNT 1 PETITION TO VACATE ARBITRATION AWARD 9 U.S.C. §10

52.     The allegations contained in paragraphs 1-51 are re-alleged and incorporated herein as if copied verbatim.

52.     Federal Rule 60 provides:

(a) CORRECTIONS BASED ON CLERICAL MISTAKES; OVERSIGHTS AND OMISSIONS. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) *mistake, inadvertence, surprise, or excusable neglect*;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) *fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party*;

(4) *the judgment is void*;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

(c) TIMING AND EFFECT OF THE MOTION.

(1) *Timing*. A motion under Rule 60(b) must be made within a reasonable time— and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2) *Effect on Finality*. The motion does not affect the judgment's finality or suspend its operation.

(d) OTHER POWERS TO GRANT RELIEF. This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2) grant relief under 28 U.S.C. §1655 *to a defendant who was not personally notified of the action; or*

(3) *set aside a judgment for fraud on the court*.

(e) BILLS AND WRITS ABOLISHED. The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.   Emphasis Added.

53.    The Arbitrators failure to conduct Arbitration in compliance with Maryland state law is

misbehavior which severely prejudiced the Petitioners, and is prohibited by FAA:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; *or of any other misbehavior by which the rights of any party have been prejudiced*; or
> (4) *where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter*

*submitted was not made.*
                                                    …
9 U.S.C. §10

54. The FAA provides the only remedy and punishment for a party's failure to appear if

properly subpoenaed.

> …if any person or persons so summoned to testify shall refuse or neglect to obey
> said summons, *upon petition the United States district court* for the district in which
> such arbitrators, or a majority of them, are sitting *may compel* the attendance of
> such person or persons before said arbitrator or arbitrators, or *punish said person*
> *or persons for contempt in the same manner provided by law* for securing the
> attendance of witnesses or their punishment for neglect or refusal to attend in the
> courts of the United States.

55.     The Arbitrators did not file a petition for contempt in the United States District Court and

awarded damages against the Petitioners that the Arbitrators were without authority to award in

clear violation of the FAA.

56.     The Arbitrators refusal to acknowledge or even consider that the Petitioners had signed a

Settlement Agreement is strong evidence of partiality or corruption in the Arbitrators.

57.     The Arbitrators are also guilty of misconduct for allowing Arbitration to continue in

violation of Maryland Rule prohibiting the unauthorized practice of law.   Non-attorneys including

formerly admitted attorneys cannot appear on behalf of or represent a client in any judicial,

administrative, legislative, or alternative dispute resolution proceeding.   See Maryland Rule 19-

305.3.

58.     Pursuant to Md. Bus. Occ. & Prof. Code § 10-601 Bar admission is required to practice

law in the State of Maryland.

59.     These issues were raised by both the Petitioners in their November 1, 2016 correspondence

to the Arbitrators, and the Respondents in several motions filed before the November 14, 2016

hearing yet the Arbitrators took no action to address these concerns and allowed the Petitioners to

be represented by a corporation, Cold Spring, and two non-attorneys, Tarr and Ottimo.

60.     The Arbitrators enabled Cold Spring, a corporation, Tarr and Ottimo, to represent claimants

in FINRA arbitration which is not only a violation of the Maryland Rules of Professional Conduct

but also <u>a crime punishable by up to one year</u> and or a fine of $5000.

>  (a)     (1)     A corporation, partnership, or any other association that violates § 10-601 or § 10-602 of this subtitle is subject to a fine not exceeding $5,000.
>
>          (2)     *An officer, director, partner, trustee, agent, or employee who acts to enable a corporation, partnership, or association to violate § 10-601 or § 10-602 of this subtitle is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 1 year or both.*
>
>          (3)     Except as provided in paragraphs (1) and (2) of this subsection, a person who violates § 10-601 of this subtitle is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 1 year or both.
>
>      (b)     A person who willfully violates any provision of Subtitle 3, Part I of this title, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10-303 of this title, is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both.
>
>      (c)     Except as provided in subsections (a) and (b) of this section, a person who violates any provision of this title is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000 or imprisonment not exceeding 1 year or both.

    Md. Bus.Occ. & Prof.Code §10-606

61.     The Court of Special Appeals held that a nonlawyer's filing of the petition and

representation of an association at trial rendered the petition, as well as the trial proceedings, a

nullity. *Turkey Point Prop. Owners' Ass'n, Inc. v. Anderson*, 666 A.2d 904 (Md. Spec. App. 1995)

### A.  <u>EQUITABLE TOLLING</u>

62.     The allegations contained in paragraphs 1-61 are re-alleged and incorporated herein as if

copied verbatim.

63.    The January 6, 2017 Notice of Service of the Award Letter ("**Notice**") provides:

<u>Right to File Motion to Vacate Award</u>

FINRA rules provide that, unless the applicable law directs otherwise, all awards rendered are final and are not subject to review or appeal. Accordingly, FINRA has no authority to vacate this award. Any party wishing to challenge the award must make a motion to vacate the award in a federal *or state court of appropriate jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. §10*, or applicable state law. There are limited grounds for vacating an arbitration award, and a party must bring a motion to vacate within the time period specified by the applicable statute. If you are not represented by counsel and wish to challenge the award, we urge you to seek legal advice regarding any rights or remedies available to you. Emphasis Added.

**Exhibit 16**

64.    **Under the Federal Arbitration Act, "[n]otice of motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C.A. § 12   However, principles of equitable tolling can still be applied.** *Young v. United States*, 535 U.S. 43, 49-50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (noting that "Congress must be presumed to draft limitations periods in light of" the principle "that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute" (internal quotation marks and citation omitted)).

65.    At least U.S. Court of Appeals has the determined that though the FAA does not contain any equitable exceptions to the 90 day statute of limitations, equitable tolling is also not specifically prohibited.   The Ninth Circuit, in an opinion released late last year, reversed the district court in one of the more unusual FINRA vacatur cases in some time, *Move, Inc. v. Citigroup Global Markets*, 842 F.3d 1152 (Nov. 9, 2016).

66.    In facts analogous to the Petitioner's case, the Ninth Circuit not only allowed a Motion to Vacate four years after the entry of the FINRA arbitration award, but also granted the Motion because one of the Arbitrators held himself out to be a licensed attorney and was not.

67.     In Maryland, non-attorneys can serve as third party neutrals, but non-attorneys cannot represent claimants in arbitration proceedings.   Doing so constitutes the unauthorized practice of law.   See Maryland Rule 19-305.1

68.     The Arbitrators completely ignored the fact that Maryland law actually *prohibited* Tam and Ottimo from representing the Petitioners in FINRA arbitration but the Arbitrators did nothing to warn the Petitioners or limit Tam and Ottimo's representation of the Petitioners.

69.     After the Arbitrators denied the Petitioner's Motion to Reconsider the $7500 award of sanctions for the Petitioners purported failure to appear, the Petitioners also sent a letter to FINRA case administrator, Arthur Baumgarnter, advising FINRA that the matter had settled and requesting FINRA's assistance.   The Petitioners ask FINRA whether or not Tarr and Ottimo could continue to represent the Petitioners in Arbitration.   The Petitioners also advised in the same letter that the Petitioners had to retain counsel to vacate the August 23, 2016 Arbitration Award and enforce the Agreement in New York.   Petitioners received no response from FINRA nor did FINRA advise the Petitioners that only the U.S. District Court has the power to vacate the arbitration award.

70.     Because Tarr and Ottimo could not file a Motion to Vacate the Arbitration Award in the U.S. District Court as NARS, the Petitioners hired David Schnur, to file a Motion to Stay Arbitration in the Suffolk County New York Superior Court on September 29, 2016. **Exhibit 16**

71.     The Superior Court correctly dismissed the action since both sides had consented to Arbitration and 9 U.S.C. 9-12 provided exclusive jurisdiction to the U.S. District Court of Maryland for challenges to FINRA arbitration awards.

72.     Upon discovery of claimants who were represented by NARS. several other FINRA arbitration panels nationwide allowed claimants to amend their filings or postpone proceedings so that the claimants could obtain counsel.   These panels concluded that representation by NARS of

claimants in FINRA arbitration constituted the unauthorized practice of law. **Exhibit 12**

73.     The Arbitrators were aware that the Petitioners on August 8, 2016 were represented by NARS who could not appear in the United States District Court to obtain relief from the Awards entered against the Petitioners yet conducted the arbitration as if the Tarr and Ottimo were licensed attorney without regard to Maryland's law explicitly prohibiting such representation.

### B.  ENFORCEMENT OF THE ARBITRATION AWARD IS PROHIBITED BY THE 14TH AMENDMENT

74.     The allegations contained in paragraphs 1-73 are re-alleged and incorporated herein as if copied verbatim.

75.     FOURTEENTH AMENDMENT provides:

> SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

76.     The Notice does not satisfy the Due Process Clause of the 14th Amendment because it does not provide any notice of the applicable statute of limitations and provides misleading information regarding the jurisdiction of the state courts to hear motions to vacate.

77.     The Notice fails to advise the Petitioners that a motion to vacate a FINRA arbitration award can only be filed in the U.S. District Court where the Award was entered and not "in a state court of appropriate jurisdiction" as alleged in the Notice provided to the Petitioners.

78.     When the Petitioners attempted to vacate the Award in the Supreme Court for Suffolk County, New York, the Petitioners were only following the disclosures provided by FINRA in the Notice which are at odds with the FAA.

79.     Moreover, the Notice does not provide that the Motion to Vacate must be filed within 90 days of the Notice of award.   The Notice only states "Any party wishing to challenge the award

must make a motion to vacate the award in a federal *or state court of appropriate jurisdiction* pursuant to the Federal Arbitration Act, 9 U.S.C. §10, or applicable state statute. There are limited grounds for vacating an arbitration award, and a party must bring a motion to vacate *within the time period* specified by the applicable statute." Emphasis Added.

80. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). See also *Richards v. Jefferson County*, 517 U.S. 793 (1996) (res judicata may not apply where taxpayer who challenged a county's occupation tax was not informed of prior case and where taxpayer interests were not adequately protected).

81. In addition, notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest. *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970)

82. Ordinarily, service of the notice must be reasonably structured to assure that the person to whom it is directed receives it. *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965); Robinson v. Hanrahan, 409 U.S. 38 (1974); *Greene v. Lindsey*, 456 U.S. 444 (1982).

83. Such notice, however, need not describe the legal procedures necessary to protect one's interest if such procedures are otherwise set out in published, generally available public sources. *City of West Covina v. Perkins*, 525 U.S. 234 (1999)

84. Unfortunately, the information provided by FINRA online is not only unclear but appears to contradict the information provided in the Notice.

85. Online, FINRA, correctly advises that Motion to Vacate must be filed in the U.S. District Court with instructions to see 9 U.S.C 9 but again fails identify the time period to file.

### **Challenges to an Arbitration Award**

FINRA does not have an appeals process through which a party may challenge an award. This means that FINRA does not hear appeals on arbitration awards.

However, under federal and state laws, there are limited grounds on which a court may hear a party's appeal on an award. Specifically, the law permits a district court to vacate or overturn an arbitration award if it finds that:

the award was procured by corruption, fraud, or undue means;
there was evident partiality or corruption in the arbitrators;
the arbitrators were guilty of misconduct in refusing to postpone the hearing, even in light of sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced;
the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made;
the arbitrators disregarded a clearly defined law or legal principle applicable to the case before them (Manifest Disregard of the Law); or
there is no factual or reasonable basis for the award (Complete Irrationality).

For more information, view the *Federal Arbitration Act, 9 U.S.C. §10*. Emphasis Added.t

https://www.finra.org/arbitration-and-mediation/decision-award

86.     FINRA does not provide in either the Notice or the information provided online that such challenges must be made within 90 days pursuant to 9 U.S.C. *§ 12* and not 9 U.S.C. §10.

87.     Consequently, the Petitioners' attempts to vacate the award in the Suffolk County Supreme Court appeared to conform with the information FINRA provided in its Notice but, as the Petitioners found out jurisdiction to hear such motions lies exclusively within U.S. District Court and only in the district where the award was entered.

88.     At the time the Award was entered, the Petitioners were unaware that an award had been entered against them in the amount of $45,000 because the Petitioners believed that their claim had been settled on August 8, 2016.

89.     The Notice was sent to Jennifer Tarr, on behalf of the Petitioners and Judy Newcomb, Esq., on behalf of the Respondents.

WHEREFORE, pursuant to Federal Rule 60(b) and the Federal Arbitration Act, the Petitioners move this Court (1) to vacate the Award in FINRA 15-01225; (2) remand the matter back to FINRA Arbitration for the sole purpose of enforcing the Settlement Agreement signed by the Petitioners on August 8, 2016; and (3) Pass an Order directing FINRA to select three new Arbitrators and appoint as Chairperson and individual duly licensed to practice law in Maryland.

### COUNT II DECLARATORY JUDGMENT- 28 U.S.C. § 2201

90.     The allegations contained in paragraphs 1-89 are re-alleged and incorporated herein as if copied verbatim.

91.     The Petitioners were injured when the FINRA arbitrators knowingly conducted an arbitration hearing in violation of the Maryland Rules prohibiting the unauthorized practice of law and when the arbitrators entered an award in violation of the FAA by usurping the contempt powers of the United States courts.

92.     The Petitioners were injured when Cape Securities filed its Petition to Confirm Arbitration Award in Georgia and not in the U.S. District Court of Maryland.

93.     The Petitioners suffered and continue to suffer actual monetary damages from attorneys' fees, their inability to access the funds in their financial accounts, mental and emotional anguish resulting from having to litigate in three different forums, the unconscionable disparity of power in the application of FINRA's arbitration rules.

94.     The injury to the Petitioner is directly traceable to actions undertaken by Cape Securities as a result of an unlawful order entered by the Arbitrators.

95.     The Petitioners will continue to be injured if forced to litigate in three forums without the ability to access their financial accounts, and will suffer future harm associated with Cape

Securities' judgment lien against the Petitioners only remaining assets.

96.    An actual controversy exists regarding the interpretation of paragraph 13 of the Cape

Securities Customer agreement as to the proper forum to file a Petition to Confirm Arbitration.

97.    Paragraph 10 provides that "Any judicial proceedings related to an arbitration (See

paragraph 13) or to this Agreement shall be conducted in the a state or federal court in Henry

County, Georgia…"

98.    Paragraph 13 provides that "the Award rendered by the arbitrators shall be final and

judgment may be entered upon it in any court having jurisdiction thereof."

99.    However, 9 U.S.C. §10 provides that any motion to vacate the arbitration award

shall be filed in the U.S. District Court wherein the award was made.

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

100.    The entry of the arbitration award in Georgia has allowed Cape Securities to choose a

forum that not only impacted the Petitioners ability to defend the action due to Georgia's remote

location and the Petitioners lack of minimum contacts but also allowed Cape Securities to bypass

the registration and service requirements of the Maryland Securities Act, that "A person may not

transact business in this State as a broker–dealer or agent unless the person is registered under this

subtitle." Corporations and Associations Article Annotated Code of Maryland §11-401(a).

101.    Maryland law also requires that each broker-dealer, agent or investment adviser consent to

service of process under §11-802(a).

> (a) A broker–dealer, agent, investment adviser, or investment adviser representative may obtain an initial registration by filing with the Commissioner, or any entity the Commissioner designates by rule or order, an application together with a consent to service of process under § 11–802(a) of this title. The application shall contain whatever information the Commissioner by rule or order requires.

§11-405(a)

(a) (1) Every issuer filing an application for registration under this title and every issuer filing an application for, request for, or notice of an exemption from registration under this title, or a notice under § 11–503.1 of this title shall file with the Commissioner, in the form which the Commissioner by rule prescribes, an irrevocable consent appointing the Commissioner or the Commissioner's successor in office to be the issuer's attorney to receive service of any lawful process in any noncriminal suit, action, or proceeding against the issuer or the issuer's successor or personal representative which arises under this title or any rules or order under this title after the consent has been filed, with the same force and validity as if served personally on the person filing the consent.

…

(b) (1) If any person, including any nonresident of this State, engages in conduct prohibited or made actionable by this title or any rule or order under this title, and he has not filed a consent to service of process under subsection *(a) of this section and personal jurisdiction over him cannot otherwise be obtained in this State, that conduct is equivalent to his appointment of the Commissioner or his successor in office to be his attorney to receive service of any lawful process in any noncriminal suit, action, or proceeding against him or his successor or personal representative which grows out of that conduct* and which is brought under this title or any rule or order under this title, with the same force and validity as if served on him personally. Emphasis added.

§11-802(a)(1) and (b)(1)

102.    From 2009 to February 13, 2017, Cape Securities' qualification to do business in Maryland was forfeited and therefore, Cape Securities had no resident agent nor did it appear to have renewed its registration with the Commissioner pursuant to the Maryland Securities Act.

103.    Instead, Cape Securities used its contract with a prohibited mandatory arbitration clause[1] to bring the action to Georgia, obtain a default judgment, and then enroll the foreign judgment in Maryland thereby creating the multi-jurisdictional nightmare that the Petitioners have found themselves.

104.    The FAA contemplated one jurisdiction to adjudicate, confirm, and/or vacate an arbitration

---

[1] The Office of the Attorney General, Maryland Division of Securities prohibits language in client contracts that contain mandatory arbitration clauses.   See page 8
http://www.marylandattorneygeneral.gov/Securities%20Documents/IA_Reg_Req.pdf

award.

105.    The end result of the ambiguous contract provisions has required that the Petitioners retain Georgia counsel and Maryland counsel to vacate the judgments entered while simultaneously moving to vacate the arbitration award in this court as provided by the FAA at a time when Cape Securities has garnished all of the Petitioners financial accounts.

106.    An actual controversy exists regarding the application of FINRA rules allowing investors to be represented by NARs before FINRA arbitration panels as well as the authority of arbitrators to issue sanctions without petition to the U.S. District Court under the FAA.

107.    FINRA Rules do not provide that the FINRA arbitrators have contempt powers reserved for the U.S. courts under the FAA yet allows their arbitrators to enter awards for monetary sanctions.

108.    The FAA provides the only remedy and punishment for a party's failure to appear if properly subpoenaed.

> …if any person or persons so summoned to testify shall refuse or neglect to obey said summons, *upon petition the United States district court* for the district in which such arbitrators, or a majority of them, are sitting *may compel* the attendance of such person or persons before said arbitrator or arbitrators, or *punish said person or persons for contempt in the same manner provided by law* for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

109.    The Arbitrators in this matter did not file a petition for contempt in the United States District Court and yet awarded damages against the Petitioners solely for the Petitioners failure to appear and failure to obey a subpoena compelling attendance.   Neither the FAA nor FINRA allow the Arbitrators to sanction parties or award attorneys' fees based upon either a party's failure to attend or obey subpoena.

> (a) The panel may sanction a party for failure to comply with any provision in the Code, or any order of the panel or single arbitrator authorized to act on behalf

of the panel.

Unless prohibited by applicable law, sanctions may include, but are not limited to:
• Assessing monetary penalties payable to one or more parties;
• Precluding a party from presenting evidence;
• Making an adverse inference against a party;
• Assessing postponement and/or forum fees; and
• Assessing attorneys' fees, costs and expenses.

(b) The panel may initiate a disciplinary referral at the conclusion of an arbitration.

(c) The panel may dismiss a claim, defense or arbitration with prejudice as a sanction for material and intentional failure to comply with an order of the panel if prior warnings or sanctions have proven ineffective.

## FINRA Reg. 12212. Sanctions

(a) To the fullest extent possible, parties should produce documents and make witnesses available to each other without the use of subpoenas.

(1) Arbitrators shall have the authority to issue subpoenas for the production of documents or the appearance of witnesses.
(2) Unless circumstances dictate the need for a subpoena, arbitrators shall not issue subpoenas to non-party FINRA members and/or employees or associated persons of non-party FINRA members at the request of FINRA members and/or employees or associated persons of FINRA members. If the arbitrators determine that the request for the appearance of witnesses or the production of documents should be granted, the arbitrators should order the appearance of such persons or the production of documents from such persons or non-party FINRA members under Rule 12513.

(b) A party may make a written motion requesting that an arbitrator issue a subpoena to a party or a non-party. The motion must include a draft subpoena and must be filed with the Director. The requesting party must serve the motion and draft subpoena on each other party. The requesting party may not serve the motion or draft subpoena on a non-party.

(c) If a party receiving a motion and draft subpoena objects to the scope or propriety of the subpoena, that party shall, within 10 calendar days of service of the motion, file written objections with the Director, and shall serve copies on all other parties. The party that requested the subpoena may respond to the objections within 10 calendar days of receipt of the objections. After considering all objections, the arbitrator responsible for deciding discovery-related motions shall rule promptly on the issuance and scope of the subpoena.

(d) If the arbitrator issues a subpoena, the party that requested the subpoena must

serve the subpoena on all parties and, if applicable, on any non-party receiving the subpoena. The party must serve the subpoena on the non-party by first-class mail, overnight mail service, overnight delivery service, hand delivery, email or facsimile.

(e) If a non-party receiving a subpoena objects to the scope or propriety of the subpoena, the non-party may, within 10 calendar days of service of the subpoena, file written objections with the Director. The non-party may file the objection by first-class mail, overnight mail service, overnight delivery service, hand delivery, email or facsimile. The Director shall forward a copy of the written objections to the arbitrator and all other parties. The party that requested the subpoena may respond to the objections within 10 calendar days of receipt of the objections. The party must serve the response on the non-party and file proof of service with the Director pursuant to Rule 12300(c)(5). After considering all objections, the arbitrator responsible for issuing the subpoena shall rule promptly on the objections.

(f) Any party that receives documents in response to a subpoena served on a non-party shall serve notice on all other parties within five days of receipt of the documents. Thereafter, any party may request copies of such documents and, if such a request is made, the documents must be provided within 10 calendar days following receipt of the request by serving them by first-class mail, overnight mail service, overnight delivery service, hand delivery, email or facsimile. Parties must not file the documents with the Director.

(g) If the arbitrators issue a subpoena to a non-party FINRA member and/or any employee or associated person of a non-party FINRA member at the request of a FINRA member and/or employee or associated person of a FINRA member, the party requesting the subpoena shall pay the reasonable costs of the non-party's appearance and/or production, unless the panel directs otherwise.

FINRA Reg. 12512. Subpoenas

110. Pursuant to Md. Bus. Occ. & Prof. Code § 10-601 Bar admission is required to practice law in the State of Maryland.

111. The Arbitrators enabled Cold Spring, a corporation, Tarr and Ottimo, NARS, to represent claimants in FINRA arbitration which is not only a violation of the Maryland Rules of Professional Conduct but also <u>a crime punishable by up to one year</u> and or a fine of $5000.

(a) (1)   A corporation, partnership, or any other association that violates § 10-601 or § 10-602 of this subtitle is subject to a fine not exceeding $5,000.

(2)      *An officer, director, partner, trustee, agent, or employee who acts to enable a corporation, partnership, or association to violate § 10-601 or § 10-602 of this subtitle is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 1 year or both.*

(3)      Except as provided in paragraphs (1) and (2) of this subsection, a person who violates § 10-601 of this subtitle is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 1 year or both.

(b)      A person who willfully violates any provision of Subtitle 3, Part I of this title, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10-303 of this title, is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both.

(c)      Except as provided in subsections (a) and (b) of this section, a person who violates any provision of this title is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000 or imprisonment not exceeding 1 year or both.

Md. Bus.Occ. & Prof.Code §10-606

112.    A controversy exists regarding the validity of the Georgia judgment.

113.    After securing a default Judgment in Georgia, the Respondents enrolled the judgment against the Petitioners in the Circuit Court of Maryland for Washington Count, in *Cape Securities, et al, v. Hessong*, *et al*., case no. C-21-JG017-000130.

114.    The Uniform Enforcement of Foreign Judgments Acts ("**UEFJA**") set forth the mechanism of obtaining full faith and credit of a foreign judgment pursuant to Article IV, section 1, of the United States Constitution.

115.    Maryland Courts may deny the enforcement of a foreign judgment if the rendering court lacked jurisdiction and the jurisdictional question was not "fully and fairly litigated and finally decided."   See *Legum v. Brown*, 395 Md. 135, 147 (2006) (quoting *Durfee v. Duke*, 375 U.S. 106, 111 (1963)). "'[A] judgment of a court in one State is conclusive upon the merits in a court in

another State only if the court in the first State had power to pass on the merits – had jurisdiction, that is, to render the judgment.'" *Legum,* 395 Md. at 144 (quoting *Durfee,* 375 U.S. at 110) (citations omitted); accord *Imperial Hotel, Inc. v. Bell Atlantic Tri-Con Leasing Corp*., 91 Md. App. 251, 270-71 (1992) ("[i]f the foreign court did not have jurisdiction, full faith and credit need not be given"). In other words, "[i]n a suit to enforce the judgment of another state the jurisdiction of the foreign court is open to judicial inquiry." *Imperial Hotel*, 91 Md. App. at 270 (citation omitted).

116.    The Georgia Judgment was obtained by default when the Petitioners who were served in Maryland did not respond to the Motion to Confirm FINRA Arbitration Award.    The Georgia Court issued a Summons to the Petitioner pursuant to the Respondents sworn Statements that the Petitioners "transacted business in Georgia" and further agreed as part of their contractual arrangement with the Respondents that an Court action would be brought in Henry County Georgia.

117.    "[A] State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, 131 S. Ct. 2846, 2853 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945))

118.    The Petitioners do not have sufficient minimum contacts with Georgia to allow for the maintenance of a suit.    The notion that a foreign corporation like Cape Securities could transact business in Maryland while its Charter was forfeited since 2009 and then exercise personal jurisdiction over residents of Maryland whose only contact with Georgia is a potentially inoperable contract with ambiguous choice of forum clause is offensive far beyond the traditional notions of fair play and substantial justice.

119.     Moreover, pursuant to Georgia's long arm statute, Georgia could not exercise personal

jurisdiction over the Petitioners regardless.

    9-10-91. Grounds for exercise of personal jurisdiction over nonresident

    A court of this state may exercise personal jurisdiction over any nonresident or his
    or her executor or administrator, as to a cause of action arising from any of the
    acts, omissions, ownership, use, or possession enumerated in this Code section, in
    the same manner as if he or she were a resident of this state, if in person or through
    an agent, he or she:

    (1) Transacts any business within this state;

    (2) Commits a tortious act or omission within this state, except as to a cause of
    action for defamation of character arising from the act;

    (3) Commits a tortious injury in this state caused by an act or omission outside this
    state if the tort-feasor regularly does or solicits business, or engages in any other
    persistent course of conduct, or derives substantial revenue from goods used or
    consumed or services rendered in this state;

    (4) Owns, uses, or possesses any real property situated within this state;

    (5) With respect to proceedings for divorce, separate maintenance, annulment, or
    other domestic relations action or with respect to an independent action for support
    of dependents, maintains a matrimonial domicile in this state at the time of the
    commencement of this action or if the defendant resided in this state preceding the
    commencement of the action, whether cohabiting during that time or not. This
    paragraph shall not change the residency requirement for filing an action for
    divorce; or

    (6) Has been subject to the exercise of jurisdiction of a court of this state which
    has resulted in an order of alimony, child custody, child support, equitable
    apportionment of debt, or equitable division of property if the action involves
    modification of such order and the moving party resides in this state or if the action
    involves enforcement of such order notwithstanding the domicile of the moving
    party.

GA Code § 9-10-91 (2016)

120.     Because the Georgia Court lacked both subject matter and personal jurisdiction, the

judgment is a nullity and this Court need not enforce it.

121.    A judgment is void if the court rendering the decision lacked personal jurisdiction, subject matter jurisdiction, or acted without regard for due process of law. See *Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861, 871 (4th Cir. 1999); *Schwartz v. United States*, 976 F.2d 213, 217 (4th Cir. 1992)

122.    According to the Maryland State Department of Assessment and Taxation, Cape Securities, Inc, license to do business in Maryland had been forfeited since 2009.

123.    9 U.S.C. § 9 provides that unless the specifically provided in the FINRA arbitration award, that Application to confirm the Award should be made in the U.S. District Court in the district where the Arbitration award was entered.

124.    However, Cape Securities, Inc., could not appear in the U.S. District Court of Maryland until its corporate charter was reinstated.

125.    On February 9, 2017, Cape Securities filed Articles of Revival/Registration of Foreign Corporation Qualification with the Maryland State Department of Assessment and Taxation.

126.    Even though Cape Securities spent $5169.00 reviving its status in Maryland, on February 20, 2017, the Respondents filed the Petition of Enforce the Arbitration Award in the Georgia instead of the U.S. District Court of Maryland in Baltimore where the arbitration award was entered contrary to both the FAA and the Maryland Arbitration Act which provides:

> (a) An initial petition shall be filed with the court in the county:
>
> (1) As provided by the agreement; or
>
> *(2) Where the arbitration hearing was held.*
>
> *(b) If the agreement does not provide for a county in which the petition shall be filed or if the hearing has not been held, the petition shall be filed with the court in:*
>
> *(1) The county where the adverse party resides;*

*(2) The county where the adverse party has a place of business;* or

(3) If the adverse party has neither a residence nor a place of business in the State, any county.

(c) A subsequent petition shall be filed with the court hearing the initial petition unless the court directs otherwise.

MD Cts & Jud Pro Code § 3-203

127.    While Cape Securities, Inc. agreement with the Petitioners provided that "Any judicial proceeding relating to an arbitration (SEE PARAGRAPH 13) or to this agreement shall be conducted in a state or federal court in Henry County Georgia…" **Exhibit 20**

128.    Paragraph 13 requires disputes to be submitted to FINRA arbitration further provides that "The Award rendered by the Arbitrators shall be final and Judgement may be entered upon it in *any* court having jurisdiction thereof." Emphasis Added.

129.    Respondents also filed submission reports which allowed the arbitration hearing to be conducted in Baltimore, Maryland. **Exhibit 21**

The Uniform Submission Report provides:

4. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily *consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.*

130.    In recent opinions, the U.S. District Court of Maryland has interpreted 9 U.S.C. § 9 to require applications to confirm FINRA Award to be filed in the U.S. District Court and within one year of the award. See *Choice Hotels International, Inc., v. Gurnee Property Mangement, Inc. Et al.* Civil Action No. PX-17-0225, *Choice Hotels International, Inc., v. Jitendra Patel*, Civil Action No. PWG-16-1316 ("**the Arbitration Act provides that an application to confirm an arbitration award should be made in the judicial district in which the award was made. 9 U.S.C. § 9**")

131.    In the absence of specifying in which court judgment should be obtained, both the FAA and the MAA require that the initial Application to Confirm the Arbitration Award to be filed in Maryland in the district where the Award was entered or in the Maryland County where the Petitioners resided or maintained a place of business.

132.    This is consistent with 9 U.S.C § 10 which provides exclusive jurisdiction to decide Motions to Vacate to the U.S. District Court where the arbitration award was entered.

133.    Therefore, the Default Judgment obtained in Henry County Superior Court of Georgia is void since the Superior Court of Georgia does not have subject matter jurisdiction under the FAA or MAA.

134.    The Default Judgment is also void since all of the Cape Securities, Inc. Agreements were executed in Maryland by the Petitioners when Cape Securities, Inc. license to do business was forfeited.   Consequently, the Cape Securities contract which provided for venue and jurisdiction in Georgia was void.   In the similar context of a corporation, C&A Section 3-503(d) provides that "the charters of . . . corporations [that have failed to file an annual tax report] are repealed, annulled, and forfeited, and the powers conferred by law on the corporations are inoperative."

135.    In *Kroop & Kurland, P.A. v. Lambros*, 118 Md. App. 651, 656 (1998), the Court stated that, "[w]hen a corporation's charter is forfeited for non-payment of taxes or failure to file an annual report, the corporation is dissolved by operation of law and ceases to exist as a legal entity."

136.     In *Dual, Inc. v. Lockheed Martin Corp*., 383 Md. 151, 163 (2004), the Court of Appeals similarly wrote that "[a] corporation, the charter for which is forfeit, is a legal non-entity; all powers granted to [the corporation] by law, including the power to sue or be sued, were extinguished generally as of and during the forfeiture period." See also *Hill Constr. v. Sunrise Beach, LLC,* 180 Md. App. 626 (2008) (holding that corporate action taken during a period when a corporation's charter is forfeited is null and void, and actions taken after its charter has been

revived do not relate back to cure the loss of a right divested during the time the charter was forfeited) in Maryland had been revoked.

137.     Consequently, the Respondents had only until January 6, 2018 to file its Application in the U.S. District Court of Maryland and the subsequent reinstatement of Cape Securities right to do business in Maryland did not relate back to cure the its' participation in the FINRA arbitration proceedings.

138.     The Award was entered in favor of an entity that did not exist in Maryland at the time the Award was obtained, and the subsequent reinstatement of Cape Securities foreign corporate charter does not relate back to cure the rights divested rendering the Award *void in ab nitio.*

139.     Pursuant to such 9 U.S.C 9, the Application to Confirm the Award in the U.S. District Court is now time barred.

140.     Perhaps the most illustrative fact for this Court to consider in weighing the Petitioners' request to vacate the Award against the weight of case law favoring the confirmation of arbitration awards, is the damage the Respondents wreaked on the Petitioners lives when the Respondents' utilized nonpublic confidential financial information in the Respondents' own file to specifically target accounts owned by the Petitioners in several financial institutions that represented the very last of the Petitioners savings.

141.     Without conducting any discovery in aid of execution, the Respondents filed Writs of Garnishment using information found in the financial documents provided by the Respondents without prior notice or consent by the Petitioners.

### §248.30  C.F.R   Procedures to safeguard customer records and information; disposal of consumer report information.

(a) Every broker, dealer, and investment company, and every investment adviser registered with the Commission must adopt written policies and procedures that address administrative, technical, and physical safeguards for the protection of

customer records and information. These written policies and procedures must be reasonably designed to:

(1) Insure the security and confidentiality of customer records and information;

(2) Protect against any anticipated threats or hazards to the security or integrity of customer records and information; and

(3) Protect against unauthorized access to or use of customer records or information that could result in substantial harm or inconvenience to any customer.

(b) *Disposal of consumer report information and records—* (1) *Definitions* (i) *Consumer report* has the same meaning as in section 603(d) of the Fair Credit Reporting Act (15 U.S.C. 1681a(d)).

(ii) *Consumer report information* means any record about an individual, whether in paper, electronic or other form, that is a consumer report or is derived from a consumer report. Consumer report information also means a compilation of such records. Consumer report information does not include information that does not identify individuals, such as aggregate information or blind data.

(iii) *Disposal* means:

(A) The discarding or abandonment of consumer report information; or

(B) The sale, donation, or transfer of any medium, including computer equipment, on which consumer report information is stored.

(iv) *Notice-registered broker-dealers* means a broker or dealer registered by notice with the Commission under section 15(b)(11) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(b)(11)).

(v) *Transfer agent* has the same meaning as in section 3(a)(25) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(25)).

(2) *Proper disposal requirements*—(i) *Standard.* Every broker and dealer other than notice-registered broker-dealers, every investment company, and every investment adviser and transfer agent registered with the Commission, that maintains or otherwise possesses consumer report information for a business purpose must properly dispose of the information by taking reasonable measures to protect against unauthorized access to or use of the information in connection with its disposal.

(ii) *Relation to other laws.* Nothing in this section shall be construed:

(A) To require any broker, dealer, or investment company, or any investment adviser or transfer agent registered with the Commission to maintain or destroy any record pertaining to an individual that is not imposed under other law; or

(B) To alter or affect any requirement imposed under any other provision of law to maintain or destroy any of those records.

142.   The Respondents' own privacy policy promises that the Respondents will "limit access to nonpublic information about you *to those employees who need to know that information in order to provide products and services to you.*" Emphasis Added. **Exhibit 22**

143.   Releasing the whereabouts of the Petitioners financial accounts to a collection attorney to garnish the Petitioners' remaining property is perhaps the ultimate breach of trust yet another violation of federal law.   This law was enacted to protect the privacy of consumers who provide the most sensitive financial information to their broker-dealers who in turn are supposed to act in the best interest of the consumer always.

144.   The Petitioners believe that a declaratory judgment will settle the controversy and prevent future similar acts when other arbitration panels interpret FINRA rules to allow proceedings to be conducted in violation of Maryland law and the FAA.

145.   The declaratory judgment will serve a further useful purpose by providing guidance to Arbitrators until FINRA can promulgate rules that harmonize with state and federal statutes.

146.   The Petitioners requests a declaratory judgment because there is no other alternative remedy that is better or more effective.

147.   The Petitioners believe that a declaratory judgment is necessary to decrease the friction between the state and federal jurisdictions with regard to the powers afforded to the U.S. courts and the forums that are appropriate for confirmation of arbitration awards given that Motion to Vacate the Arbitration Awards cannot be filed in the state courts under the FAA.

WHEREFORE, the Petitioners pray that this court: (1) enter a declaratory judgment in favor of the

Petitioners, and against Cape Securities, and the Co-Respondents that:

a) The Arbitrators conducted the arbitration proceedings in violation of Maryland law which prohibits Non-attorneys from representing individuals in FINRA arbitration hearings.

b) The FINRA Arbitration Award entered against the Petitioners on January 6, 2017 is unenforceable against Petitioners because the arbitrators exceeded their authority under both the FAA and FINRA rules by ordering monetary sanctions for the Petitioners' failure to attend the August 8-9, 2016 hearings and for the Petitioners failure to obey a subpoena compelling their attendance.

c) Under the FAA, the correct forum to confirm the Arbitration Award is the jurisdiction in which the arbitration award was entered.

d) Cape Securities and the Co-Respondents submitted to the jurisdiction of the courts of the Maryland by virtue of its registration to sell securities to Maryland residents.

e) The mandatory arbitration and choice of law provisions in the contract between Cape and the Petitioners is not enforceable because Cape Securities and the Co-Respondents failed to properly register and renew their respective registrations with the Commissioner under the Maryland Securities Act and the Maryland State Department of Assessment and Taxation.

f) Releasing the whereabouts of the Petitioners financial accounts to a collection attorney to garnish the Petitioners' remaining property is a violation of federal law.

g) The Georgia judgment is void because the Henry County Superior Court of Georgia lacked personal jurisdiction, subject matter jurisdiction, or acted without regard for due process of law.

## CONCLUSION

The Petitioners trusted the Respondents with their lives' savings. The Petitioners trusted Cold Spring to represent their interests before the FINRA Arbitrators.   The Petitioners trusted the FINRA Arbitrators to provide a forum in which each side could present their claims to a neutral but knowledge third party.   The Petitioners trusted the attorneys who negotiated for both sides to inform the Arbitrators that the matter had settled.   The Petitioners trusted the Respondents to keep their nonpublic information private.   This Arbitration Award is a blight on FINRA Arbitration proceedings.   The Award that was obtained by the Respondents was procured by fraud and deceit when the Arbitrators turned a blind eye to needs of the individuals, the elderly public investors, that FINRA is charged with protecting.   The relief that is requested is extraordinary but so are the facts of this case.

Respectfully Submitted,

 /s/ M. Christina Hamilton
M. Christina Hamilton, Esq. 16484
Alan D. Eisler, Esq.   11524
**EISLER HAMILTON, LLC**
6110 Executive Blvd. Suite 230
Rockville, MD  20852
(301) 525-9995 (direct dial)
chamilton@e-hlegal.com
aeisler@e-hlegal.com

Dated   February 19, 2018

### Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

/s/ M. Christina Hamilton
M. Christina Hamilton